USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: July 15, 2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEF HOLDINGS, LLC,

Plaintiff,

-against-

C AND H PAVING, INC., et al,

Defendants.

23-CV-06309 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is a breach of contract action. Plaintiff is NEF Holdings, LLC ("NEF"). Defendants are C and H Paving, Inc. ("C&H") and Benjamin Cranford Jr. An entity called NEFPASS and C&H executed a leasing agreement governing the lease of mechanical equipment to C&H. NEFPASS and Cranford concurrently executed a guaranty agreement in which Cranford agreed to cover C&H's obligations under the leasing agreement. NEFPASS then transferred its interest in both agreements to Plaintiff. C&H ultimately ceased making payments, and Cranford refused to cover the outstanding payments. Plaintiff alleges Defendants breached the agreements and now owe damages flowing from their breach. Before the Court is Plaintiff's unopposed motion for summary judgment. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

## I. RELEVANT FACTS[1]

### A. The Master Agreement

On December 19, 2018, NEFPASS (an affiliate of Plaintiff) and Cranford (on behalf of C&H) entered an agreement called the Master Lease Agreement ("the Master Agreement"). Dkt.

[1] The following facts are taken from Plaintiff's Complaint, Dkt. No. 10 ("Compl."), Defendant's Answer to the Complaint, Dkt. No. 20 ("Ans."), Plaintiff's Rule 56.1 Statement of Material Facts, Dkt.

No. 39-1. It provided a framework for NEFPASS to lease construction equipment to C&H in exchange for periodic rent payments. Compl. ¶ 11. This framework entailed the two entities entering subsequent schedule agreements for the lease of specific construction equipment in exchange for rental payments. NEFPASS and C&H subsequently entered four such schedule agreements, each of which was governed by the Master Agreement. *See* Dkt. No. 39-3–6.

The Master Agreement obligated C&H as Lessee to pay the rental installment specified in each schedule agreement, defined as "Basic Rent"; as well as "all other amounts payable in accordance" with the Master Agreement, defined as "Other Payment." Dkt. No. 39-1 ¶ 2. The Master Agreement collectively defines the "Basic Rent" and "Other Payment" as "Rent." *Id.* "If any Rent is not paid within five (5) days of the due date, Lessee shall pay a late charge equal to five (5) percent of the amount in arrears." *Id.*

The Master Agreement included comprehensive provisions triggered by an event of default. Namely, if C&H failed to pay either Basic Rent on the due date or an Other Payment, the Master Agreement specified it would be in "default," and Plaintiff would become entitled to liquidated damages under each of the schedule agreements. *Id.* ¶¶ 15–16.

The Master Agreement defines liquidated damages as (1) the "Stipulated Loss Value of the Equipment"; (2) "all other Rent due"; and (3) "all Enforcement Costs," with an offset for "disposition proceeds" if Plaintiff recovered and sold the equipment from Defendants. *Id.* ¶ 16(b). Stipulated Loss Value is defined as "the product of the [full amount due under the schedule], times the percentage factor applicable." Dkt. No. 39-1 ¶ 12. The percentage factor is

No. 40 ("Pl.'s 56.1"), and from the parties' declarations and exhibits. The facts are either undisputed or construed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

determined using a table that appears in each schedule with one column providing a "loss payment date" and an adjacent column providing a corresponding percentage factor. If Defendants failed to make a Rent[2] payment, then the applicable rent factor corresponds to the next approaching date after non-payment.

Next, "Enforcement Costs" include "all unpaid Rent" and "all reasonable legal fees (including consultation, drafting notices or other documents, expert and witness fees, sending notices or instituting, prosecuting or defending litigation or arbitration) and other enforcement costs and expenses incurred by reason of any Event of Default in the exercise of Lessor's rights or remedies." Dkt. No. 39-1 ¶ 16(c). The Master Agreement also specifies that Defendants would be liable for interest on "all amounts due" until payment "at a per annum interest rate that is the lesser of eighteen (18) percent or the maximum rate permitted by applicable law." *Id.*

**B. The Guaranty Agreement**

One other agreement is relevant to this lawsuit. As a condition to executing the Master Agreement, Cranford executed a "Master Lease Guaranty" in which he "unconditionally guarantee[d]" to pay NEFPASS and its assignees any amounts owing under the Master Agreement and "all equipment Schedules executed or to be executed pursuant thereto." Dkt. No. 39-2 (the "Guaranty Agreement"). In the Guaranty Agreement, Cranford waived any right to require Plaintiff to proceed against C&H before seeking payments from him. Last, the Guaranty Agreement specifies that Cranford "shall be liable for all reasonable attorneys' fees and other costs and expenses incurred by reason of any Event of Default or the exercise of Lessor's remedies hereunder and/or under the Lease Documents." *Id.* at 4.

---

[2] "Rent" is a defined term that includes "Basic Rent" and "Other Payment" under each schedule agreement.

NEFPASS later assigned the Master Agreement and Guaranty Agreement to Plaintiff. Compl. ¶ 1.

**C. Defendants' Default and Subsequent Sale of Equipment**

Plaintiff alleges C&H and Cranford defaulted on October 4, 2021, by failing to make payments required by the Master Agreement and Guaranty Agreement, respectively.[3] Compl. ¶ 51. On March 30, 2022, Defendants voluntarily surrendered all twenty-three pieces of leased equipment. Compl. ¶ 42. Plaintiff subsequently retained Ritchie Brothers Auctioneers (America) Inc. ("Ritchie Bros.") to sell the surrendered equipment at auction. Compl. ¶ 43. Ritchie Bros. then sold the equipment for a gross sum of $2,051,500, with $1,822,375 of that amount going to Plaintiff. Compl. ¶¶ 45–46.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on July 21, 2023, alleging a single count of breach of contract. Dkt. No. 1. Defendants answered on October 13, 2023, and raised as affirmative defenses that Plaintiff failed to mitigate and that the accord and satisfaction doctrine applies. On March 18, 2025, Plaintiff moved for summary judgment. Dkt. No. 37. Plaintiff argues the Court should award it $2,623,610.07, "representing the Liquidated Damages and Enforcement Costs less the credit for the sale of the Specified Equipment." Dkt. No. 38 at 9. *See* Dkt. No. 39-11 (showing Plaintiff's damages calculation); Dkt. No. 39-12 (showing Plaintiff's calculation of legal fees).[4]

---

[3] Defendants deny that the breach occurred on October 4, 2021, but offer no alternative date for their admitted breach. Compl. ¶¶ 35, 51.

[4] Plaintiff shows that—for an October 4, 2021 default—the stipulated loss for the four schedules totals $2,785,554.08, past rent due as of November 1, 2021 was $271,400.25, and late fees totaled $13,718.49, for a total liquidated damages amount of $3,070,672.82. Dkt. No. 39-11. Default interest totaled $1,275,044.31 as of January 24, 2024. *Id.* Plus $100,267.94 in legal fees as "enforcement costs," this amount totals $4,445,985.07. Minus a sales credit of $1,822,375.00 (the proceeds of the equipment sale), the amount comes to $2,623,610.07, which is what Plaintiff seeks in damages.

Defendants missed their April 18, 2025 deadline to oppose the motion. Dkt. No. 36. Accordingly, on May 21, 2025, the Court issued an order warning Defendants that if they failed "to respond to Plaintiff's Motion for summary Judgment by May 30, 2025, the Court will consider the Motion unopposed." Dkt. No. 41. No response from Defendants was ever received.

## DISCUSSION

### I. LEGAL STANDARD ON SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[5] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, to that end, "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). "When parties cross-move for summary judgment, each motion is analyzed separately, in each case construing the evidence in

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

the light most favorable to the non-moving party." *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025).

A court may not grant summary judgment merely because it is unopposed. *Vermont Teddy Bear Co., Inc. v. 1-800 Bearram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The Court must instead scrutinize the record and confirm the movant "has met its burden of demonstrating that no material issue of fact remains for trial." *Id.* at 244. In assessing an unopposed motion, the Court deems admitted the facts contained in the movant's Rule 56.1 statement, although the Court may not rely entirely on that statement. *Id.* at 244; *Bank of America, N.A. v. City View Blinds of N.Y., Inc.*, 2022 WL 580764, at *4 (S.D.N.Y. Feb. 25, 2022); *Bank of Am., N.A. v. Jacobi Tool & Die M.F.G.*, No. 17-CV-06828 (SFJ) (AKT), 2019 WL 3553796, at *4 (E.D.N.Y. Aug. 5, 2019).

## II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM

C&H breached the Master Agreement by failing to make the scheduled rent payments, and Cranford breached the Guaranty Agreement by failing to make those payments on C&H's behalf. Under New York law, the elements of a breach of contract claim are: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 632 F. Supp. 3d 517, 527 (S.D.N.Y. 2022). The elements of a breach of guarantee, meanwhile, are (1) a debt owed by a third party; (2) the defendant guaranteed to pay that debt; and (3) neither the third party nor the defendant paid that debt. *Es-Tee Realty Co. v. Soumekhian*, 323 F. App'x 3, 4 (2d Cir. 2008). A plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred because of the breach. *Queens Ballpark Co., LLC v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 259 (S.D.N.Y. 2016). Although damages must be reasonably certain,

"[c]ertainty," as it pertains to general damages, refers to the *fact* of damage, not the amount. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007). Therefore, as a matter of law, a court may find the damages element of a breach of contract claim satisfied for summary judgment so long as it is "certain that damages have been caused by a breach of contract." *Id.* "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000).

The undisputed facts show that Plaintiff's predecessor and C&H entered into the Master Agreement, providing NEFPASS would lease construction equipment in exchange for money under contemplated schedule agreements. Plaintiff's predecessor and Cranford executed the Guaranty Agreement whereby Cranford promised to guarantee the payments under the Master Agreement and the schedule agreements. C&H then executed four separate schedule-agreements. All rights under the agreements were assigned to Plaintiff by its predecessor. Neither C&H nor Cranford made outstanding payments due under the agreements, despite numerous requests by Plaintiff. Each of these agreements is wholly unambiguous. Based on the foregoing, there are no materials issues regarding Plaintiff's claim that Defendants breached the Master Agreement, schedule agreements, or Guaranty Agreement.

Neither of Cranford's affirmative defenses raised in his answer move the needle. First, Cranford argued that Plaintiff failed to mitigate. Ans. at 1. This argument ignores that the Master Agreement and Guaranty Agreement included enforceable liquidated damages clauses, so "the non-breaching party has no duty to mitigate damages resulting from the breach." *Queens Ballpark*, 226 F. Supp. 3d at 259. And there is no supported allegation that Plaintiff's actions with respect to the disposition at auction did not comport with the offset requirements of the

liquidated damages provisions. Second, Cranford asserted that the accord and satisfaction doctrine applies. Ans. at 2. Cranford offers no argument or basis for this defense, and the Court therefore rejects it.[6]

## III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON DAMAGES

The Master Agreement provides that, in the event of default, Plaintiff would be entitled to Liquidated Damages consisting of (1) the "Stipulated Loss Value of the Equipment"; (2) "all other Rent due"; and (3) "all Enforcement Costs," minus "disposition proceeds." Plaintiff has provided documentation showing its entitlement to damages of $2,623,610.07. *See* Dkt. No. 39-7–12.[7] As Plaintiff has met its burden of showing that no genuine material fact exists regarding the issue of damages, Plaintiff's motion for summary judgment on the issue of damages is GRANTED.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment (Dkt. No. 37) is GRANTED. Plaintiff is hereby ORDERED to file with the Court by **July 31, 2026,** a proposed judgment consistent with the Court's ruling, including an award of $2,623,610.07 in damages

[6] Defendants turning over the leased equipment cannot have been in accord and satisfaction of the entire contractual dispute given the Master Agreement provides for liquidated damages with an offset for the sale of leased equipment, explicitly contemplating that an equipment surrender or sale alone would not function as an accord and satisfaction for contractual breach.

[7] Under New York law, attorneys' fees are not recoverable by a prevailing party "unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). A court should not infer a party's intention to provide counsel fees as damages for a breach of contract "unless the intention to do so is unmistakably clear" from the language of the contract. *Sparta Commercial Servs., Inc. v. DZ Bank AG Deutsche Zentral–Genossenschaftsbank*, 160 F.Supp.3d 580, 585 (S.D.N.Y. 2015). The agreements in this case meet this standard and evince an "unmistakably clear" intent to provide for attorneys' fees in the event of a breach. *Id*. Accordingly, Plaintiffs are entitled to an award of attorneys' fees for Defendant's breach under the terms of the Agreement.

plus applicable pre- and post-judgment interest, and proof of service of the proposed judgment on Defendants.

Dated: July 15, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge